**SHAMIS & GENTILE, P.A.**
Katherine S. Phillips (SBN: 353048)
kphillips@shamisgentile.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
scott@edelsberglaw.com
Gabriel Mandler**
gabriel@edelsberglaw.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Katie Switzer, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Project 7, Inc.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Katie Switzer ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Project 7, Inc. DBA JOYRIDE ("Defendant") based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## INTRODUCTION

1. This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of several of its products, which are marketed as free of sugar.

2. Specifically, Defendant has sold and marketed the Products (fully defined in Paragraph 12, below) as "ZERO Sugar" (the "Zero Sugar Representations"), representing to consumers that its Products are free of sugar.

3. Despite the Zero Sugar Representations, and unbeknownst to consumers, the Products contain sugar in the form of allulose.

4. Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on the Zero Sugar Representations. Had Plaintiff and other consumers been aware that the Zero Sugar Representations were false, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least one member of the proposed Class(es) is a citizen of a state different than Defendant's state of citizenship; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in California, and intentionally and purposefully placed the Products into the stream of commerce within California.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased one of the Products in this District.

## PLAINTIFF

8. Plaintiff is a citizen of the United States and the State of California, and she currently resides in Fremont, California. In or around April 2023, Plaintiff purchased the JOYRIDE Zero Sugar Peachy Mango Rings, JOYRIDE Zero Sugar Fruity Gummy Bears, JOYRIDE Zero Sugar Sour Gummy Worms, and JOYRIDE Zero Sugar Sour Fruit Gummies from Amazon.com while residing in Fremont, California. Based on the Products' Zero Sugar Representations, Plaintiff reasonably believed that the Products were free of sugar. Had she known that the Products were not free of sugar, she would not have purchased them, or would have paid significantly less for them.

9. Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as advertised, if they were actually free of sugar. Although Plaintiff regularly shops at various stores that carry the Products, absent an injunction of Defendant's deceptive advertising, she will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Products are not free of sugar, she lacks personal knowledge as to Defendant's specific business practices, and thus, she will not be able to determine whether the Products truly will accurately reflect their advertising. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the Zero Sugar Representations. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that the Products are free of sugar.

## DEFENDANT

10. Defendant Project 7, Inc. DBA JOYRIDE is a Delaware corporation with its principal place of business in San Clemente, California. Defendant operates the JOYRIDE brand which sells candy products, including the Products challenged in this Complaint. Defendant sells the Products throughout the United States and California, including in this District.

## FACTUAL ALLEGATIONS

11. Defendant is responsible for the formulation, manufacturing, marketing, labeling, advertising, distribution, and sale of JOYRIDE branded products, which are sold in retail stores across the United States, as well as directly on Defendant's website and through third-party online retailers.

12. The full list of the Products at issue in this case is as follows: (1) JOYRIDE Zero Sugar Peachy Mango Rings; (2) JOYRIDE Zero Sugar Fruity Gummy Bears; (3) JOYRIDE Zero Sugar Sour Gummy Worms; and (4) JOYRIDE Zero Sugar Sour Fruit Gummies (collectively, the "Products").

13. Defendant has prominently labeled each Product with the claim "ZERO Sugar" in large, stylized, high-contrast type that occupies a substantial portion of the principal display panel, representing to consumers that the Products contain no sugar. A representative example is depicted below:



14. Defendant bolsters this claim by repeating the Zero Sugar Representations on the back of each label. As shown below, the back panel of each Product states "ZERO sugar per serving" and "absolutely ZERO SUGAR."




15. However, despite the Zero Sugar Representations, the Products are not free of sugar. Instead, the Products contain sugar in the form of allulose.

16. Specifically, as Defendant states on the back label of the Products, each Product contains 13 grams of allulose per bag, or per serving.

17. Allulose is a sugar, in both chemical composition and function.

18. *First*, allulose is a sugar in chemical composition. Allulose has the molecular formula $C_6H_{12}O_6$ and is the C-3 epimer of D-fructose, meaning that it shares fructose's molecular formula and differs only in the position of a single hydroxyl group.[1]

19. For this reason, allulose is a sugar under federal law, which defines sugars by chemical structure. Specifically, 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose is a free monosaccharide and therefore falls squarely within that definition.

20. Relatedly, a food may be labeled "sugar free" or "zero sugar" only if it contains less than 0.5 grams of sugars per serving, as those sugars are defined by 21 C.F.R. § 101.9(c)(6)(ii). *See* 21 C.F.R. § 101.60(c)(1).

21. The United States Food and Drug Administration (the "FDA") has repeatedly confirmed that "[a]llulose is a monosaccharide." FDA, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* (the "Guidance") § III.3 (Oct. 2020); *see also id.* § II (allulose "is a monosaccharide with a molecular formula of $C_6H_{12}O_6$"); *id.* § III.2 (same).

22. The FDA reached that classification deliberately. In its 2016 rulemaking, the FDA expressly declined to exclude allulose from the sugars declaration, determining that allulose, "as a monosaccharide, must be included in the amount of the declaration of [carbohydrate, sugars and/or added sugars] pending any future rulemaking." 81 Fed. Reg. 33742, 33796 (May 27, 2016).

23. The Guidance did not disturb that determination. It announced only that the FDA "intend[s] to exercise enforcement discretion with respect to the exclusion of allulose from the amount of 'Total Sugars' and 'Added Sugars' declared on the label pending future rulemaking"—a statement of enforcement policy, not an interpretation of § 101.9(c)(6)(ii). Guidance § III.3. The FDA has not since undertaken that rulemaking, and its original definition therefore remains in force.

[1] Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 Foods 448 (Oct. 1, 2019), https://doi.org/10.3390/foods8100448.

24. *Second*, allulose functions as a sugar. Allulose performs sugar's technological functions in food, delivering bulk, mouthfeel, solubility, and browning comparable to conventional sugars, and it is added to foods and beverages as a partial replacement for sugars and high-fructose corn syrup.

25. Allulose is therefore a sugar, and the presence of allulose in the Products renders Defendant's Zero Sugar Representations false and misleading.

26. Reasonable consumers, including Plaintiff, understand the Zero Sugar Representations to mean that the Products contain no sugar. Because the Products in fact contain sugar, the Zero Sugar Representations are likely to deceive, and did deceive, reasonable consumers.

27. The reasonable belief that the Products are free of sugar was a significant factor in Plaintiff's and other Class members' decisions to purchase the Products. Thus, Defendant promises products that are free of sugar, but provides consumers with products that contain sugar.

28. As the entity responsible for the development, labeling, manufacturing, advertising, distribution, and sale of the Products, Defendant knew or should have known that the Products' Zero Sugar Representations are false and misleading.

29. Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's false and misleading representation. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market.

30. Consumers are willing to pay more for the Products based on the belief that the Products are free of sugar. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed.

31. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

32. The Products' Zero Sugar Representations are also unlawful nutrient content claims under federal law and California law.

33. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. §§ 301 *et seq.* FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

34. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate Zero Sugar Representations expressly characterize the level of sugar in the Products and are thus nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

35. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

36. Within Subpart D, section 101.60(c)(1) specifically governs the use of the sugar free nutrient content claims and prohibits the use of terms such as "zero sugar" unless the claims satisfy certain requirements, including:

> (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving . . . ; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar" . . . .

21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive, thus each must be satisfied.

37. The Products do not comply with these regulations because, as stated on the back label of the Products, the Products contain 13 grams of allulose per bag (or per serving), and the Products therefore contain 26 times the 0.5-gram threshold set by section 101.60(c)(1)(i).

38. Because the Products' sugar content exceeds 0.5 grams when accounting for the allulose, the Products cannot lawfully bear the Zero Sugar Representations.

39. Defendant likewise does not satisfy section 101.60(c)(1)(ii). Allulose is a sugar and is expressly listed as an ingredient of each of the Products, but Defendant does not follow that listing in the ingredient statement with an asterisk referring to a statement that allulose "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar." Regardless, even if Defendant did include such a disclaimer, the disclaimer option under section 101.60(c)(1)(ii) is available only where the independent 0.5-gram requirement of section 101.60(c)(1)(i) is also met, which it is not.

40. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

41. Plaintiff does not seek to enforce the FDCA directly. Instead, she seeks relief under independently enforceable state consumer-protection laws, including California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.* (the "Sherman Law") which adopts food-labeling requirements identical to federal requirements. The federal provisions identify the standards California has adopted and the conduct that renders the Products misbranded under California law.

42. The Sherman Law adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); *see also id.* § 110670.

43. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

44. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Sections 109885 and 110390 (defining "advertisement" to include representations on products and their packages, and prohibiting dissemination of food advertisements that are false or misleading in any particular);

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food); and

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

45. Because the Products bear nutrient-content claims (the Zero Sugar Representations) despite containing more than 0.5 grams of allulose per serving in violation of 21 C.F.R. § 101.60(c)(1), the Products are misbranded under California law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

## PLAINTIFF LACKS AN ADEQUATE REMEDY AT LAW

46. Plaintiff pleads the equitable claims and remedies asserted in this Complaint, including restitution and injunctive relief, in the alternative to the legal claims and remedies asserted herein. Plaintiff and the Classes are entitled to do so because they lack an adequate remedy at law for the equitable relief sought. As to the restitution sought, the legal remedies available to Plaintiff and the Classes are inadequate because they are not equally prompt, certain, or efficient and require proof of elements and entitlement to relief different from those required for restitution. Accordingly, if Plaintiff or any Class member is unable to recover damages under the legal claims asserted herein, restitution may nevertheless be necessary to restore money wrongfully obtained by Defendant. As to injunctive relief, damages are retrospective and cannot redress the prospective injury alleged in paragraph 9 above. Only an injunction can remedy Plaintiff's continuing inability to rely on Defendant's labeling of the Products.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**
All persons who purchased the Products in the United States within the applicable statute of limitations period ("Nationwide Class").

**California Class**
All residents of California who purchased the Products within the applicable statute of limitations period ("California Class").

**California Consumer Subclass**
All residents of California who purchased the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the Nationwide Class and the California Class, the "Classes").

48. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

50. Plaintiff is a member of all the Classes.

51. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained from Defendant's records through its online marketplace, or through sales data obtained via third parties. At a minimum, there likely are tens of thousands of Class members.

52. **Commonality:** There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendant's representations about the Products and reasonably believe the Products are free of sugar;

c. whether Defendant knew or should have known its representations were false or misleading;

d. whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e. whether Defendant's conduct violates California's Sherman Law;

f. whether certification of each Class is appropriate under Rule 23;

g. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

h. the amount and nature of the relief to be awarded to Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

53. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the representations made by Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that Defendant's representations were untrue.

54. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

55. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

56. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint.

Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for individual Class members to obtain redress. Furthermore, many of the Class members may be unaware that claims exist against Defendant.

57. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(*For the Nationwide Class, or in the alternative, the California Consumer Subclass*)**

58. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

59. Plaintiff brings this claim herself and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Consumer Subclass, against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

60. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the Nationwide Class, or in the alternative, the California Consumer Subclass, constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

61. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing the Products with the Zero Sugar Representations, Defendant has represented

and continues to represent that the Products have characteristics (i.e., that they are free of sugar) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

62. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Products with the Zero Sugar Representations, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., that they are free of sugar) when they are not of that standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

63. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Products with the Zero Sugar Representations, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

64. At all relevant times, Defendant has known or reasonably should have known that the Products' Zero Sugar Representations are false and misleading, and that Plaintiff and other members of the Nationwide Class, or in the alternative, the California Consumer Subclass, would reasonably and justifiably rely on the Zero Sugar Representations when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing that the Products are free of sugar, when they are not.

65. Plaintiff and members of the Nationwide Class, or in the alternative, the California Consumer Subclass, have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Nationwide Class, or in the alternative, the California Consumer Subclass.

66. Plaintiff and members of the Nationwide Class, or in the alternative, the California Consumer Subclass, have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not free of sugar.

67. Under Cal. Civ. Code § 1782, on or around September 11, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendant, outlining that Defendant has violated the CLRA for the reasons described herein. If within 30 days of receipt, Defendant does not agree to rectify the problems identified herein, Plaintiff will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of herself and the members of Nationwide Class, or in the alternative, the California Consumer Subclass.

68. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code §§ 17500, *et seq.***
***(For the Nationwide Class, or in the alternative, the California Class)***

69. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

70. Plaintiff brings this claim herself and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class, against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

71. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

72. Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, through its deceptive advertising, that the Products are free of sugar when they are not. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

73. As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Nationwide Class, or in the alternative, the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her and members of the proposed Nationwide Class, or in the alternative, the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**California Business & Professions Code §§ 17200, *et seq.***
**(*For the Nationwide Class, or in the alternative, the California Class*)**

74. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

75. Plaintiff brings this claim herself and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class, against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

76. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

77. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, the Sherman Law, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class.

78. Under the UCL, a business act or practice is "unfair" if the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of

the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' advertising. Deceiving consumers into believing they will receive Products that are free of sugar, but failing to provide the Products as advertised, is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class.

79. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because, due to the Products' Zero Sugar Representations, the Products have the effect of deceiving consumers into believing they will receive products that are free of sugar when the Products are not manufactured as such. Because Defendant misled Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Nationwide Class, or in the alternative, the California Class.

80. Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed Nationwide Class, or in the alternative, the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

81. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

82. Plaintiff brings this claim herself and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

83. California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

84. Plaintiff and members of the California Class formed a contract with Defendant at the time they purchased the Products. As part of those contracts Defendant labeled and marketed the Products as containing "ZERO Sugar," representing that the Products are free of sugar.

85. The Products' Zero Sugar Representations: (a) are affirmations of fact or promises made by Defendant to consumers that the Products are free of sugar; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods that were made as part of the basis of the bargain to purchase the Products, and which created express warranties that the Products would conform to the product descriptions.

86. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

87. Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products in accordance with the Zero Sugar Representations.

88. Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

89. Plaintiff and the other California Class members notified Defendant of the breaches of its express warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff

sent a notice letter to Defendant regarding its breaches on or around September 11, 2026. Defendant was also on notice of its breaches from other sources, including the FDA's guidance cited *supra*.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314**
**(*For the California Class*)**

90. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

91. Plaintiff brings this claim herself and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code § 2314.

92. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

93. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

94. Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

95. By advertising the Products with the Zero Sugar Representations, Defendant made an implied promise in the Products' labeling that the Products are free of sugar. The Products, however, have not conformed to these promises because the Products contain sugar in the form of allulose. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

96. If Plaintiff and members of the California Class had known that the Products' Zero Sugar Representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

97. Plaintiff and the other California Class members notified Defendant of the breaches of its implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendant regarding its breaches on or around September 11, 2026. Defendant was also on notice of its breaches from other sources, including the FDA's guidance cited *supra*.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*For the Nationwide Class, or in the alternative, the California Class*)**

98. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

99. Plaintiff brings this claim herself and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class, against Defendant for unjust enrichment.

100. As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, to induce them to purchase the Products. Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, have reasonably relied on the misleading representations and have not received all of the benefits (i.e., Products that are free of sugar) promised by Defendant through the Products' Zero Sugar Representations. Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

101. Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class.

102. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class—i.e., Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

103. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(*For the California Class*)**

104. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

105. Plaintiff brings this claim herself and on behalf of the members of the proposed California Class against Defendant for common law fraud.

106. Defendant has willfully, falsely, and knowingly misrepresented the Products through the Products' Zero Sugar Representations, as it knew that the Products were not free of sugar.

107. Defendant has therefore made knowing, fraudulent misrepresentations as to the Products.

108. Defendant's misrepresentations were material (i.e., they affected Plaintiff's and Class members' purchasing decisions given their importance), and were central to the Products' functionality because the Products are advertised as free of sugar, but in fact contain sugar in the form of allulose.

109. Defendant knew or recklessly disregarded the fact that the Products' Zero Sugar Representations were false and deceptive.

110. Defendant intended that Plaintiff and members of the Classes rely on the Products' advertising, because, if they had known the truth that the Products' Zero Sugar Representations were false and misleading, they would have paid less for the Products or would not have purchased them at all.

111. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiff and members of the

Classes had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

112. For these reasons, Plaintiff and members of the Classes have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, herself and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, violate the statutes and laws described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F. An award of nominal, punitive, and statutory damages;

G. An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: September 11, 2026

**SHAMIS & GENTILE, P.A.**

By: */s/ Katherine S. Phillips*
Katherine S. Phillips (SBN: 353048)
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299
kphillips@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
Gabriel Mandler**
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*